NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1124
_____

PETERSON MANUEL

v.

NRA GROUP LLC; DOES 1-10


NRA Group, LLC,
                    Appellant

_____


On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1-15-cv-00274)
District Judge:  Honorable Christopher C. Conner
_____

ARGUED
November 6, 2017

Before:  JORDAN, HARDIMAN and SCIRICA, *Circuit Judges.*

(Filed: January 12, 2018)
_____

Richard J. Perr   [ARGUED]
Fineman Krekstein & Harris
Tenn Penn Center
1801 Market St., Suite 1100
Philadelphia, PA   19103
        *Counsel for Appellant*

Sergei Lemberg   [ARGUED]
Lemberg & Associates
1100 Summer St. , 3rd Floor
Stamford, CT  06905
        *Counsel for Appellee*

_____

OPINION[*]
_____

JORDAN, *Circuit Judge*.

NRA Group, LLC appeals from an order granting Peterson Manuel's motion for summary judgment as to liability on his claim under the Telephone Consumer Protection Act of 1991 ("TCPA" or the "Act"), 47 U.S.C. § 227.  That order established NRA's statutory liability for placing, without Manuel's consent, 146 debt collection calls to his cell phone using an automatic telephone dialing system, in violation of the TCPA.  For the reasons that follow, we will affirm.

I.    BACKGROUND

A.    The Facts[1]

Manuel is a resident of Fort Lauderdale, Florida.  NRA is a debt collection agency that acquired a collection account from the City of Fort Lauderdale, Florida, for an outstanding parking ticket in Manuel's name.  NRA obtained Manuel's phone number from a third party provider, and, though it says it believed the number corresponded to Manuel's home phone, the number actually was for Manuel's cell phone.  NRA concedes that it made 146 collection calls to that cell phone between May 31, 2012, and June 17,

_____

[*] This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

2

2014. In its collection efforts, NRA used an electronic dialing device, called the Mercury Predictive Dialer.

According to Manuel's deposition testimony, he answered some of NRA's calls. He also testified that he received voicemails from NRA which contained silence, terminating with a "click," but never including a live message from an NRA representative. (App. at 66.)[2] Manuel further testified that he told NRA to stop calling.

Manuel ultimately filed a complaint with the Consumer Financial Protection Bureau ("CFPB") regarding NRA's calls to his cell phone. On June 23, 2014, the CFPB notified NRA of the complaint, after which NRA stopped calling Manuel's cell phone.

## B.     The TCPA

The TCPA prohibits using an automatic telephone dialing system or an artificial or prerecorded voice message to make a non-emergency call to a cellular telephone without the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(A)(iii). In pertinent part, the Act provides:

> It shall be unlawful for any person within the United States ... to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing

---

[1] These facts are recounted in the light most favorable to NRA, the non-movant. *Lexington Ins. Co. v. W. Pa. Hosp.*, 423 F.3d 318, 322 n.2 (3d Cir. 2005).

[2] NRA argues that there is a genuine dispute of material fact regarding how many of the 146 calls Manuel actually received. It asserts that the record includes "no evidence … that any of the calls from NRA were received by [Manuel] or that he was ever present when his phone rang[.]" (Opening Br. at 39.) NRA also asserts that Manuel's deposition testimony on that issue is "unsubstantiated and vague." (Opening Br. at 9.) At oral argument, however, NRA conceded – as it should have – that Manuel received some of the 146 calls, but it maintains that record evidence does not substantiate that he received all 146 calls.

3

system ... to any telephone number assigned to a ... cellular telephone service[.]

*Id.* According to the Act, an "automatic telephone dialing system" is "equipment which has the capacity-- (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id.* § 227(a)(1). The statute expressly establishes a cause of action entitling a successful plaintiff to $500 in statutory damages per violation and authorizing the award of treble damages for willful or knowing violations. *Id.* § 227(b)(3). Pursuant to that provision, Manuel filed suit against NRA.

## C. Procedural History

Manuel's one-count complaint alleges that NRA repeatedly violated the TCPA by making non-emergency collection calls to his cell phone using an automatic telephone dialing system, without his consent. It also alleges that Manuel answered calls from NRA. Manuel sought statutory damages, as well as treble damages for each willful or knowing violation.

Following discovery, both parties moved for summary judgment. The District Court denied NRA's motion, and granted Manuel's in part, finding NRA liable for 146 statutory violations of the TCPA. The Court denied summary judgment as to treble damages, ordering the case to proceed to trial on whether NRA had willfully or knowingly violated the TCPA.[3]

---

[3] Specifically, the District Court's order granted summary judgment as to liability on Manuel's TCPA claim, as set forth in Count I, but denied summary judgment as to his request for treble damages. Although the order did not identify the precise number of

4

Up until ten days before trial, NRA filed a series of post-summary judgment motions asking for a variety of forms of relief. Those filings included a motion to stay the case, a motion to dismiss the case for lack of subject matter jurisdiction under Rule 12(b)(1), and a request for jury instructions putting the issue of liability before the jury. In those filings, NRA raised new legal theories, apparently seeking alternative grounds for avoiding the District Court's summary judgment decision. The District Court denied each motion. Based on arguments it first introduced in post-summary judgment filings, NRA now asks us to grant relief from the partial summary judgment establishing its liability for 146 violations of the TCPA.[4]

## II.  DISCUSSION[5]

NRA raises merits-based challenges to the District Court's determination at summary judgment that it is liable for 146 violations of the TCPA. In the first instance,

---

statutory violations, the District Court's opinion did. We are unpersuaded by NRA's suggestion on appeal that the District Court's summary judgment order was somehow prejudicially unclear.

[4] After a two-day trial on treble damages, a jury found that NRA did not willfully or knowingly violate the TCPA. Neither party appeals that determination.

[5] The District Court had jurisdiction under 28 U.S.C. § 1331. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 377 (2012); *Susinno v. Work Out World Inc.*, 862 F.3d 346, 348 (3d Cir. 2017). We have appellate jurisdiction under 28 U.S.C. § 1291. *Susinno*, 862 F.3d at 348; *see also Mims*, 565 U.S. at 372 (reversing dismissal for lack of subject matter jurisdiction, and holding that "federal and state courts have concurrent jurisdiction over private suits arising under the TCPA"). Because we do not address the validity of the FCC's orders, we need not address Manuel's contention that the Hobbs Act, 28 U.S.C. §§ 2342(1), 2344, restricts our jurisdiction because it provides "exclusive" and time-limited jurisdiction over challenges to Federal Communications Commission orders.

though, we address NRA's renewed subject matter jurisdiction challenge, arguing that Manuel lacks Article III standing to bring his TCPA claim in federal court.

## A. Article III Standing

We have an independent obligation to decide whether Manuel has Article III standing, as that is a jurisdictional requirement.[6] The Supreme Court's well-known standing test sets forth an "irreducible constitutional minimum" of three elements that a plaintiff must satisfy: (1) "the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical," (2) "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court[,]" and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (first three alterations in original) (internal quotation marks and citations omitted). The issue that the parties have particularly framed for us is whether Manuel suffered a sufficiently concrete injury, and we agree that the remaining prongs of the standing inquiry are not at issue.

The District Court concluded that Manuel had established a concrete injury-in-fact. It reasoned that, under *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), *revised* (May

---

[6] NRA filed its motion to dismiss for lack of subject matter jurisdiction after summary judgment. That is far from ideal, but objections that relate to subject matter jurisdiction "may be raised at any time by the parties, or by the court sua sponte ...." *Zelson v. Thomforde*, 412 F.2d 56, 58 (3d Cir. 1969).

6

24, 2016) and "the emerging consensus" of district courts in our Circuit, Manuel sufficiently "established invasion of privacy and nuisance by demonstrating that NRA used an autodialing device to send him automated calls, as set forth in the court's [summary judgment] memorandum opinion[.]" (App. at 19.) The Court did not specify whether it considered NRA's motion a factual challenge to jurisdiction, as NRA argues it is, or whether it was a facial challenge.

A facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to consider the allegations of the complaint as true[,]" whereas a factual attack challenges "the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or otherwise present[ing] competing facts." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (second alteration in original) (internal quotation marks and citations omitted). On a factual attack, the plaintiff bears the burden to prove that jurisdiction exists, and "the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* (internal quotation marks and citation omitted). "Although we exercise plenary review over the District Court's legal conclusions, we review the Court's findings of fact, including findings related to jurisdiction, only for clear error." *Id.*

How we classify NRA's motion is not dispositive here. If it is a facial challenge, NRA clearly loses, because Manuel has alleged a sufficiently concrete injury to establish Article III standing. In *Susinno v. Work Out World Inc.*, we rejected a similar challenge to a plaintiff's constitutional standing to bring a TCPA claim. 862 F.3d 346, 348 (3d Cir.

2017). There, we concluded that the plaintiff – who had allegedly received only one unsolicited call and prerecorded voicemail on her cell phone – nevertheless adequately pled a "concrete, albeit intangible, harm[,]" satisfying *Spokeo* and our Circuit's standing case law. *Id.* at 352. Indeed, we said that *Spokeo* simply "meant to reiterate traditional notions of standing[,]" which "requir[es] only that [a] claimant allege some specific, identifiable trifle of injury" to be able to bring a claim in federal court. *Id.* (second alteration in original) (citations omitted). Once a plaintiff has done so, that plaintiff has satisfied the threshold standing requirement in Article III. *Id.*

Our reasoning in *Susinno* applies with full force here. As in *Susinno*, Manuel's complaint pled that he received calls on his cell phone, and that NRA placed those calls using an automatic telephone dialing system, without his consent, in violation of the TCPA.

NRA argues that *Susinno* is procedurally inapposite because that case addressed a facial challenge to jurisdiction, while NRA's challenge is to the factual foundation of jurisdiction. By NRA's lights, it has raised a factual challenge "because it disputes whether [Manuel] has actually suffered any harm as a result of the phone calls he received from NRA." (App. at 187.) Even if that were true – and we do not decide that it is – the record includes evidence to substantiate a sufficiently concrete injury. For example, Manuel testified in his deposition that he answered some of NRA's calls, and that he also received voicemails from NRA, containing nothing but silence. He testified that he told NRA to stop calling. Manuel also complained to the CFPB about NRA's

8

calls to his cell phone. It is not surprising, then, that at oral argument, NRA conceded that Manuel actually received some calls from NRA. *See supra* n.2.

We reject NRA's argument that Manuel must nevertheless point to record evidence establishing that he actually received all 146 calls. That argument conflates the threshold standing inquiry with the question of a party's ultimate success on the merits. The Supreme Court has stated that the standing inquiry is independent of the merits inquiry. *See Warth v. Seldin*, 422 U.S. 490, 500 (1975) ("[S]tanding in no way depends on the merits of the plaintiff's contention that particular conduct is illegal[.]"). We too have said that "[t]he standing requirement is analytically distinct from the merits of the underlying dispute." *Davis*, 824 F.3d at 348. Because Manuel alleged that he received calls and provided evidence of the same, he has established his standing to bring a TCPA claim in federal court, regardless of whether NRA has advanced a facial or a factual challenge to jurisdiction.[7]

---

[7] NRA's reliance on *Public Interest Research Group of New Jersey, Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111 (3d Cir. 1997), is misplaced. That case is procedurally inapposite, as there, we were confronted with a District Court's findings undermining its earlier conclusion that the plaintiffs had suffered or would suffer an injury in fact sufficient to satisfy jurisdiction under the citizen-suit provision of an environmental statute. *Id.* at 117. More importantly, though, the Supreme Court has since clarified the requisite standing inquiry for statutory causes of action. The question is whether a plaintiff falls within the class of persons protected under a statute, *i.e.*, whether the plaintiff falls within the zone of interests protected, and whether the plaintiff's injury is fairly traceable to the defendant's conduct. *See Lexmark Int'l., Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1390-91 & 1391 n.6 (2014) (announcing that zone-of-interests and proximate-cause injury tests supply relevant limitations on statutory standing). Although framed as a jurisdictional challenge, NRA's argument that Manuel failed to establish a concrete injury under the TCPA for lack of evidence substantiating "actual receipt" essentially raises a statutory question to be addressed at the merits. *See Marathon Petroleum Corp. v. Sec'y of Fin. for Del.*, 876

## B. The Merits

Turning to the arguments on the merits, NRA faults "the District Court's mistaken interpretation of the TCPA[,]" saying that the Court's statutory interpretation was flawed in two respects. (Opening Br. at 15.) First, NRA argues that the Court misinterpreted the TCPA's definition of an automatic telephone dialing system and, consequently, erroneously concluded at summary judgment that NRA's Mercury Predictive Dialer fell within the statutory definition, without considering whether the dialer also meets "the number *generation* requirement in the statute." (Opening Br. at 15.) Second, it argues that the District Court misinterpreted the TCPA's "make a call" language and thus erroneously imposed statutory liability for 146 violations without evidence establishing that Manuel actually received each of the 146 calls.[8] Whatever the merits of those

---

F.3d 481, 492 n.13 (3d Cir. 2017) (discussing *Lexmark* and stating that "whether '[a] particular class of persons ha[s] a right to sue under [a] substantive statute'" is addressed in the "zone-of-interests analysis," which "focuses on whether a party 'has a cause of action under the statute' and …. is a statutory question to be addressed on the merits" (citations omitted)).

[8] NRA initially framed that challenge as follows: "Whether the District Court erred by not instructing the jury that [Manuel] must prove *receipt* of each of the 146 calls that were allegedly placed by NRA before imposing liability for 146 separate violations of the TCPA." (Opening Br. at 2.) In its reply brief, NRA suggests that, "[t]o the extent that [it] is more properly classified as a challenge to the [District] Court's summary judgment order rather than to the jury verdict sheet (and NRA's legal brief in support of proposed jury instructions classified as a motion for reconsideration), it should be classified as such." (Reply Br. at 15.) As that restyling suggests, among the post-summary judgment motions it filed, NRA never filed a motion seeking reconsideration of the District Court's summary judgment decision.

arguments (and we express no view), NRA failed to timely raise them before the District Court at summary judgment. It has therefore forfeited them on appeal.[9]

"It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered. If it does not do so, and loses the motion, it cannot raise such reasons on appeal." *P.R.B.A. Corp. v. HMS Host Toll Roads, Inc.*, 808 F.3d 221, 224 n.1 (3d Cir. 2015) (quoting *Liberles v. Cook County*, 709 F.2d 1122, 1126 (7th Cir. 1983)); *see also In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 262 (3d Cir. 2009) ("For an issue to be preserved for appeal, a party 'must unequivocally put its position before the trial court at a point and in a manner that permits the court to consider its merits.'" (quoting *Shell Petroleum, Inc. v. United States*, 182 F.3d 212, 218 (3d Cir. 1999))). Accordingly, "[w]e have frequently noted the well-established rule that absent compelling circumstances an appellate court will not consider issues that are raised for the first time on appeal." *Shell*, 182 F.3d at 219 (internal quotation marks and citation omitted); *see also Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 608 (7th Cir. 2012) (recognizing that preservation rules "prevent parties from getting two bites at the apple").

---

[9] We view as a forfeiture NRA's failure to timely raise its statutory interpretation arguments. "The terms waiver and forfeiture – though often used interchangeably by jurists and litigants – are not synonymous." *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 17 n.1 (2017); *see also Barna v. Bd. of Sch. Dirs. of the Panther Valley Sch. Dist.*, __ F.3d __, 2017 WL 6045091, at *6-7, *6 n.7 (3d Cir. Dec. 7, 2017) (discussing distinction between "waiver" and "forfeiture," explaining that the former is accomplished by intent, whereas the latter arises through neglect, and noting that a waived claim may not be resurrected on appeal).

11

For its part, NRA conceded in its briefing and again at oral argument – as it had to – that "its exact arguments regarding the proper interpretation of the TCPA were not raised before this appeal." (Reply Br. at 7.) In fact, at summary judgment, both parties relied on the FCC's interpretation of "automatic telephone dialing system." At summary judgment, NRA did not contest the FCC's interpretation, as it now does on appeal; nor did it point the District Court to the principal legal authorities it now cites on appeal, including our non-precedential opinion in *Dominguez v. Yahoo, Inc.*, 629 F. App'x 369 (3d Cir. 2015), which had issued months prior to summary judgment briefing.[10]

NRA nevertheless argues that "[w]aiver … does not apply to a pure question of law where the statute was at issue in the lower court and the opposing party had ample opportunity to develop the factual record." (Reply Br. at 7.) Not so. Simply "raising an issue in the District Court is insufficient to preserve for appeal all arguments bearing on that issue." *United States v. Joseph*, 730 F.3d 336, 341 (3d Cir. 2013). That is especially true here, because NRA's arguments require interpreting a statute and multiple implementing FCC orders defining and regulating technology. *See Frank v. Colt Indus.*, 910 F.2d 90, 100 (3d Cir. 1990) (explaining that, "where important and complex issues of law are presented, a far more detailed exposition of [an] argument is required to preserve an issue"). More important still, we do not reach a forfeited argument in a civil case

---

[10] NRA raised its challenge to the FCC's interpretation of "automatic telephone dialing system" when asking the District Court to stay the case, pending a decision in a consolidated appeal challenging a 2015 FCC order. *See ACA Int'l v. FCC*, No. 15-1211 (D.C. Cir.). As of this writing, an opinion has not issued in that case. NRA raised its argument that the TCPA's "make a call" language requires actual receipt to trigger liability when asking the District Court to charge the jury on statutory liability.

absent "truly 'exceptional circumstances.'" *Barna v. Bd. of Sch. Dirs. of the Panther Valley Sch. Dist.*, __ F.3d __, 2017 WL 6045091, at *7 (3d Cir. Dec. 7, 2017) (quoting *Brown v. Philip Morris Inc.*, 250 F.3d 789, 799 (3d Cir. 2001)). And we detect no such circumstances here. We therefore decline to reach the merits of NRA's statutory liability arguments.[11]

## III.  CONCLUSION

For the foregoing reasons we will affirm the District Court's order granting in part summary judgment for Manuel and holding NRA liable for 146 statutory violations of the TCPA.

---

[11] Because NRA forfeited its statutory interpretation arguments on appeal, we do not address the merits of those arguments and, accordingly, we will deny Manuel's request for sanctions under Rule 38 of the Federal Rules of Appellate Procedure. *See Kerchner v. Obama*, 612 F.3d 204, 209 (3d Cir. 2010) ("Damages [under Rule 38] are awarded by the court in its discretion" to "compensate appellees who are forced to defend judgments awarded them in the trial court from appeals that are wholly without merit[.]").